## OVAL WOOD DISH CO. et al. v. SANDY CREEK, N. Y., WOOD MAN. F'G CO.

### (Circuit Court, N. D. New York.  March 5, 1894.)

#### No. 5,959.

1. PATENTS—PRIOR USE.
   The defense of prior use must be established beyond a reasonable doubt.

2. SAME—TWO PATENTS FOR SAME INVENTION.
   After an inventor has secured a patent for a concavo-convex dish cut or scooped from a block of wood by a revolving curved knife working alternately with a flat facing-off knife, and another patent for a machine for thus making the dish, he cannot secure a third valid patent for the process of making the dish, as it would be, practically, a new patent for matter covered by the prior ones. Plummer v. Sargent, 7 Sup. Ct. 640, 120 U. S. 442, followed.

3. SAME—INVENTION—LIMITATION—WOODEN DISHES.
   The Smith patent, No. 273,773, for a wooden dish, is restricted by the specification to a dish cut or scooped from a block of wood by a revolving curved cutting knife or its equivalent, and as thus construed shows invention and is valid.

4. SAME—INVENTION—WOODEN DISH MACHINES.
   The Smith patent, No. 276,198, for a machine for scooping out wooden dishes from a block of wood, and consisting of a revolving curved cutting knife and a flat facing knife, shows invention of a high order, and is entitled to a reasonable application of the doctrine of equivalents.

5. SAME—INFRINGEMENT—EQUIVALENTS.
   Infringement of a patent for a machine for scooping out wooden dishes is not avoided by making the cutting knife oscillate instead of revolve, and the flat facing knife reciprocate vertically instead of revolve around a shaft, for in each case the devices are mechanical equivalents.

In Equity.  Suit by the Oval Wood Dish Company and Seth H. Smith against the Sandy Creek, N. Y., Wood Manufacturing Company for infringement of certain patents relating to wooden dishes.

Almon Hall, Matteson & De Angelis, Arthur Stem, and Lysander Hill, for complainants.

James P. Foster and Andrew Wilson, for defendant.

COXE, District Judge. This is an equity action, based upon three letters patent, granted to Seth H. Smith and now owned by the complainants. A fourth patent, No. 322,017, granted July 14, 1885, to Smith for a knife for cutting dish blanks, is included in the bill, but the court decided at the argument that it was not infringed. The action is, therefore, upon the other three.

The first of these, No. 273,773, was granted March 13, 1883, for a wooden plate. The application was filed November 22, 1882. The second, No. 276,198, was granted April 24, 1883, for a machine for cutting wooden plates. The application was filed January 27, 1883. The third, No. 278,828, was granted June 5, 1883, for the process of cutting articles from wood. The application was filed January 31, 1883. In brief, then, the patents are first, for a machine, second for the process of the machine, and third, for the product of the machine.

## No. 273,773.

The specification of this patent, which is first in order of time, says:

"This invention relates to plates or dishes for butter, berries, and for other purposes; and it consists of a concavo-convex shell, segmental in cross-section, and with a level or horizontal upper edge, the same being cut or scooped in a single piece from the face of a block of wood, as will be hereinafter fully described and particularly pointed out in the claims. * * * My improved plates are made of wood in a single piece by cutting them from the face of a block, across the grain of the latter. This is done by means of a machine which I have made the subject of a separate application for letters patent, and which comprises a revolving curved-knife for scooping or cutting the shells from the face of the block, and a flat facing-knife for facing off the block after each stroke of the cutting knife. By this facing-off process, which takes place intermittingly with the operation of the cutting-knife, the upper edge of each shell is leveled off smoothly, thus preventing splitting or slivering, and causing all the dishes or shells cut by the same machine to be of exactly the same size and shape, so that they may be nested together in the smallest possible space for transportation."

All the claims are involved. They are:

"1. A plate or dish cut or scooped from a block of wood in concavo-convex form, as an article of manufacture.

"2. A plate or dish cut or scooped from the face of a block of wood in concavo-convex form and segmentally in cross-section, as an article of manufacture.

"3. A plate or dish consisting of a shell cut or scooped from the face of a block of wood in concavo-convex form and with horizontal upper edges, as an article of manufacture.

"4. A plate or dish consisting of a shell cut or scooped from the face of a block of wood in concavo-convex form, segmentally in cross-section, and with horizontal upper edges as an article of manufacture."

The defense is that the claims are too broad and the patent void for that reason.

## No. 276,198.

The invention of this patent, as stated in the specification, relates to a machine for cutting continuously from a block of wood concavo-convex shells, plates or dishes, serving as packages for butter, berries and for other purposes. The invention consists in certain improvements in the construction of the said machine. The specification describes minutely the construction of the machine and proceeds:

"After moving the follower back, a block of wood of the proper size is placed in the trough and clamped by the dogs. When the machine is started the block is fed to the knives or cutters, which are to be so arranged in relation to each other and to the feed that the feed shall take place after the curved knife completes its passage across the face of the block and before the facing knife reaches the edge of the same, while the latter must nearly or quite complete its throw before the cutting knife comes into action. The function of the latter is to cut from the face of the block shells or concavo-convex dishes, while the facing-knife before each throw of the cutting-knife faces off the block, thus causing the cutting-knife to cut always from the face of the block, and make all the shells cut of exactly the same size and shape."

The claims involved are the first and second. They are as follows:

"1. A machine for cutting concavo-convex shells continuously from a block of wood, the same comprising in its construction a revolving curved knife having both its ends attached to the driving-shaft, and a facing-knife attached radially to a shaft located at an angle to the driving-shaft, substantially as set forth.

"2. In a machine for cutting concavo-convex shells continuously from a block of wood, the combination of a revolving curved knife having both its ends attached to the driving-shaft, a facing-knife attached radially to a shaft located at an angle to the driving-shaft, and mechanism for feeding a block intermittingly to said knives after the throw of the cutting-knife and before the throw of the facing-knife, substantially as set forth."

The defenses are that, with the claims limited as the defendant insists they must be by reason of the prior art, they are not infringed.

## No. 278,828.

The specification of this patent states:

"This invention relates to an improved art or method of cutting continuously from a block of wood concavo-convex or curved articles, such as thin plates or dishes suitable for grocer's packages and for other purposes; and my invention consists in the improved method of cutting the said articles continuously in such a manner that they shall be of exactly the same size and shape and with smooth level edges so that no finishing process shall be necessary in order to make them ready for the market, this being accomplished by first cutting a properly-shaped shell from the face of a block of wood by a single pass of a rapidly-revolving knife having both ends secured to the shaft or axis on which it revolves in front of the face of the block, and next facing off the block by means of a straight knife or cutter, which is secured at an angle to and revolves with a shaft located in a line with the line of feed. * * * In carrying out my invention it is my purpose to avail myself of a machine embodying in its construction a bent or curved knife mounted upon a revolving shaft, by means of which the article is cut or sliced from the end of the block, and a straight knife mounted upon a revolving shaft at an angle to the first one, for facing off the block. It will be understood from this that the plates, dishes or other articles cut from the block will be true segmental in cross section, segments of a circle the center of which is the center of the shaft carrying the cutting-

knife, while in longitudinal section their shape will be regulated by that of the cutting-knife. Now, if a block of wood were fed continuously to a revolving cutting-knife arranged as described, without intermittingly facing off the block, the knife would eventually begin cutting at the edge of the block, thus being likely to split or sliver the edges of the articles, and under all circumstances cutting the edges so thin and uneven that each plate, dish, or other article would require to be faced or finished off before it would be marketable. By my invention these objections are overcome. * * * By the process herein described wooden plates, dishes, and other like articles may be manufactured in a most excellent manner and at a trifling cost."

The claims are as follows:

"1. The herein-described art or method of cutting concavo-convex wooden articles or shells continuously from a block, which consists in cutting said shells from the face of the block by a single pass of a rapidly-revolving knife having both ends secured to the shaft or axis on which it revolves in front of the face of the block, as set forth.

"2. In the art of cutting concavo-convex wooden articles or shells continuously from a block, the herein-described process of facing off the said block by means of a straight knife or cutter which is secured at an angle to and revolves with a shaft located in a line with the line of feed, substantially as set forth.

"3. The herein-described art or process of cutting concavo-convex wooden articles or shells continuously from a block, which consists in alternately cutting a shell from the face of said block and facing off the block by means substantially as described, as herein set forth."

The defenses are first, that the patent is void for the reason that the patentee could not have a patent for the machine and the product and also for the process, within the doctrine of Miller v. Eagle Co., 66 O. G. 845, 14 Sup. Ct. 310, and Mosler, etc., Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, and, second, that it is functional, describing merely the action of the machine. Infringement is not disputed. Two defenses, applicable to all of these patents, relate to an alleged prior use by Dewitt C. Peck and another by James and Wilson McConnell.

## Prior Use.

Neither the Peck nor the McConnell prior use has been established to the satisfaction of the court. It is doubtful if the court could find for the defendant upon this issue if it were only necessary to establish the defense by a preponderance of proof. Surely the defense has not been established beyond a reasonable doubt. Such a doubt will, it is thought, find lodgement in any fair, impartial mind after reading this testimony. There can never be a decree for a defendant in these controversies until such doubt is removed. That it exists here is enough. The Telephone Case, 126 U. S. 546, 8 Sup. Ct. 778; Tatum v. Gregory, 41 Fed. 142; The Barbed-Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 443, 450; Mack v. Spencer, etc., Co., 52 Fed. 819. There is a marked contradiction between the witnesses of the defendant and the complainants on this issue, but the latter, from their surroundings, their means of knowledge, and the corroborating data which they produce, are certainly as likely to be correct as the former. The court is not satisfied that what Peck did was prior to November, 1882, the date of the Smith invention. The letter written by Peck in April, 1884, is of itself almost sufficient to raise a reasonable doubt. This letter is as follows:

"Pierson, Mich., April 7, 1884.

"The Smith Manufacturing Co., Delta, O.—Gents: I am thinking quite strongly of engaging in cutting out butter-plates, and therefore would like a machine. We have plenty of timber and I have a steam power, and would like information as to the amount of power used and speed of cutting, also the royalty and sale. Please inform me in full.

"Yours, respectfully,                                    D. W. C. Peck."

Is it possible that he could have written this letter if he had perfected a machine for cutting butter-plates nearly two years before? Clearly not, unless upon the theory that he had become a pronounced paranoiac during the interim. The attempt to establish the prior use of the McConnell machine was a complete failure. The McConnell structure was not before the Smith invention, but even if it had been it would have been valueless as an anticipation. Putnam v. Hollender, 19 Blatchf. 48, 6 Fed. 882; Adams v. Jones, 1 Fish Pat. Cas. 527.

### The Process Patent.

Is the process patent valid? It is contended by the defendant that it is void in view of what is shown in the dish and machine patents, previously granted. The application as originally filed November 22, 1892, embraced claims for the product, process and machine. On the 9th of January, 1883, the examiner wrote as follows:

"As presented the application describes and claims a machine and a product which cannot be prosecuted in a single application. * * * A division of the case will therefore be required before further action can be had upon the merits."

It will be observed that the examiner did not decide that a patent with claims for a process and a product could not issue, but only that a patent with claims for a machine and a product could not issue. However, as a result of this ruling the inventor divided the application, leaving the original specification to stand for the dish only and on the 27th of January, 1883, he filed a new application for the machine and on the 31st of January, 1883, he filed a completed application for the process. The application for the process patent was filed two months after the application for the product patent and four days after the application for the machine patent.

Two patents cannot issue for the same invention. This is rudimentary. Where two such patents issue to the same person the second patent is void. The case of Miller v. Eagle, etc., Co., supra, is the latest and the most pronounced case on this subject. By that decision the following propositions are established: A second patent cannot issue to the same party for an invention actually covered by an earlier patent, although the claims of the two patents may differ, the latter patent protecting certain features of the same invention not protected by the earlier patent. When a process and a product are so identical that the former creates the latter and only so, there are not two distinct and separable inventions. The subject matter of a second patent, in such circumstances, is so inseparably involved in the first as to render the second invalid.

"After a patent is granted for an article described as made by causing it to pass through a certain method of operation to produce it, as in this case, cutting away the metal in a certain manner, and then bending what is left in a certain manner, the inventor cannot afterwards, on an independent application, secure a patent for the method or process of cutting away the metal and then bending it so as to produce the identical article covered by the previous patent, which article was described in that patent as produced by the method or process sought to be covered by taking out of the second patent." Mosler, etc., Co. v. Mosler, supra.

Turning now to the patents in suit it will be seen that the first, or dish, patent is generally for a concavo-convex dish cut or scooped from a block of wood by a revolving curved knife working alternately with a flat facing-off knife, as shown in the patent for the machine. The machine patent describes with great minuteness the details of the mechanism, its mode of operation and the method of making a dish. The process patent, No. 278,828, must, therefore, be declared invalid in view of the prior patents. As was said in Plummer v. Sargent, 120 U. S. 442, 7 Sup. Ct. 640:

"Although there are two patents, one for a process and the other for a product, there is in fact but one invention."

The claims of No. 273,773 might have been included in No. 278,-828 and vice versa. A dish made by the process of the latter would, of course, infringe the former and a dish which would infringe the former, when its claims are properly construed, could, upon the proofs, only be made by the process of No. 278,828. If No. 278,828 were a foreign patent No. 273,773 would have to be limited to expire at the same time. Accumulator Co. v. Julien Electric Co., 57 Fed. 605, 614. In short, after the dish and the machine patents there was no room for the process patent.

The other two patents remain to be considered. The fundamental question for the judge to determine in every patent cause is whether or not the patentee has done something to benefit the particular art to which the patent relates. Has that art been progressed by his contributions to it? Is the art better for what he has done? Would the world lose anything if the patented structure or product were obliterated? If this question be answered in the affirmative, if the court be convinced that the patentee has made a discovery which is beneficial to mankind and has materially advanced the art to which it refers, then the effort should be to give the patentee the full benefit of his invention. If the patent office has given him a patent or a claim which fully protects him that patent or claim is the one the court should endeavor to sustain. If two valid patents have been given him and both are necessary for his protection they should receive liberal interpretation. In short, the effort should be to secure protection which is as broad as the actual invention.

### The Dish Patent.

The contention regarding the dish patent is that it must be construed so broadly as to invalidate it and regarding the machine patent that it must be construed so narrowly as to negative infringement. Neither position can be maintained. As has been

seen the product patent does not cover every wooden plate or dish. Such a construction would be absurd. The only common sense interpretation of the patent is that it refers to a dish made by the machine of the second patent, or its equivalent, or by a similar method. This is not left to conjecture. The patent expressly refers to the machine and says the plates are made by a revolving cutting knife and a flat facing knife working alternately, by which process thin, tough, flexible dishes are made of the same size and shape which may be nested together in the smallest possible compass. A dish having these characteristics and the features covered by the claims is a new article possessing advantages not existing before. A dish not having these features, but made by hand, for instance, in attempted imitation of the complainants' dish would not infringe. The dish of the patent is not carved, turned, pressed or sawed; it is a scooped dish—a dish scooped from a block of wood by a revolving curved knife, or its equivalent. In no other way can this dish be made.

### The Machine Patent.

Regarding the machine patent invention is not disputed; at least the defendant, operating under a similar machine covered by a later patent, is hardly in a position to dispute it. Complainants' machine is most complete and ingenious. Mechanical skill could never have produced it. It required a high order of inventive talent. The problem to be solved was one of unusual difficulty. The dishes must be strong, light, thin and of uniform size, they must be cheap, they must not sliver or split or lose their shape, they must be capable of being packed in a small space so that they can be transported conveniently and without injury. It is idle to assert that one who has constructed a machine which has overcome all these obstacles, a machine which has created a new art and supplied commerce with over a hundred million of such dishes annually, is not entitled to a place among inventors. Moreover, as before stated, he is entitled to liberal treatment at the hands of a court of equity.

All of the elements of the patented combination are concededly old. Indeed, the Lackersteen, English patent, which describes a machine for making match sticks, contains all the elements but the curved knife, and the Manning patent, which covers a machine for making barrel staves, contains all of the elements but the facing-off knife. These are the defendant's best references. Neither singly nor united would they suggest the combinations of the claims involved. The same assertion can be maintained if to the Lackersteen and Manning machines are added all the bread cutters, the peach stoners, the straw cutters and the vegetable slicers with which the record abounds. So far are these removed from the complainants' machine that it is thought they are entitled to a reasonable application of the doctrine of equivalents. No machine ever did before what the Smith machine does and the complainants are entitled to hold as an infringement a machine which does the same thing and accomplishes the same result, even though

the parts are ingeniously changed for the purpose of avoiding infringement. The claims might have been broader. Nothing in the state of the art required the limitations upon which the defendant relies, and it should be the endeavor of the court not to permit these limitations to deprive the inventor of the fruits of his invention if it can be done without violence to the well-known canons of construction.

### Infringement.

The first machine used by the defendant concededly did not infringe the machine patent for the reason that it employed no facing knife and the dishes made by this machine did not infringe the third and fourth claims of the product patent for the reason that they did not have horizontal upper edges. Subsequently a machine was used by the defendant which possessed every element of complainants' combination. The only material differences are that defendant's cutting knife was made to oscillate instead of revolve and the facing knife to reciprocate vertically instead of revolve around a shaft. Both move in the same plane and do identically the same work. That this construction was adopted for the purposes of evasion is very apparent. It is thought that the changes adopted by the defendant were equivalents for the parts which performed the identical functions in the combinations of the claims and this is true of both the machines used by the defendant which contained facing-off knives. The fact that the facing-off was done in the second machine by two knives, each cutting half way across the face of the block is immaterial.

The complainants are entitled to a decree for an injunction and an accounting upon the claims of No. 273,773 and the first and second claims of No. 276,198, but without costs.