## TRAVERS v. AMERICAN CORDAGE CO.

### (Circuit Court, S. D. New York. December 6, 1894.)

1. PATENTS—PROOF OF ANTICIPATION—EVIDENCE AS TO DATE OF PUBLICATION.
   The date of a publication containing a description of an alleged anticipating process cannot be established (the book itself not being in evidence) by a certificate of the commissioner of patents to an extract therefrom, and further certifying that the volume is in the library of the patent office, and was received there on a date named.
2. SAME—INFRINGEMENT OF PROCESS PATENT.
   One who appropriates the essentials of a patented process does not escape infringement by using that process in connection with improvements subsequently adopted by the inventor.
3. SAME—PROCESS FOR MAKING HAMMOCK BODIES.
   The Rood patent No. 277,161, relating to a new process of making hammock bodies, shows utility, novelty, and invention, and is entitled to a liberal construction.
4. SAME—PROCESS FOR MAKING HAMMOCK ENDS.
   The Rood patent No. 296,460, covering a new method of making the ends of hammocks,—attaching the converging strands to the completed hammock body,—discloses patentable invention, and was not anticipated.

This was a suit in equity by Vincent P. Travers against the American Cordage Company for infringement of certain patents for improvements in the art of making hammocks.

This suit is based upon two letters patent, granted to Albert O. Rood, as assignor to the complainant, for improvements in the art of making hammocks. The first of these, No. 277,161, relates to a 'new process of making hammock bodies. It is dated May 8, 1883. The application was filed July 15, 1882. The specification says: "This invention relates to hammocks and to the art or process of making the bodies of hammocks; and it consists in carrying the thread or cord used for the hammock body first through the loops of a selvage previously made, and then straight from one end of the frame to the other, and then looping it into the meshes already formed on its way back to the first end." The only claim involved is the first, which is as follows: "The method herein described of producing the body of a hammock, which consists in first joining the threads for the body with the selvage, next forming them into interlocking body strands near the selvage, and in then running the thread for the rest of the body in a straight line from one end of the body to the other, and in interlooping it with the straight strands thus formed on the way back, substantially as herein shown and described."

The second patent, No. 296,460, relates to a new method of making the ends of hammocks. It is dated April 8, 1884. The application was filed November 17, 1883. The specification says: "This invention has for its object to simplify the mode of constructing hammocks, and particularly the ends thereof, which are the parts of hammocks containing the converging threads and the suspension eyes or loops. The invention consists, principally, in forming the hammock body with loops in the ends thereof in any known manner; in then forming each end of the hammock by drawing a cord, from which the converging strands are to be made, through the loops at the end of the hammock body in a straight line, and in then drawing this thread from between said loops, forming of it the converging strands of the hammock end, and finally uniting these strands into a terminal eye." The claims are as follows: "(1) The art of making hammocks which consists in forming the hammock body with loops, b, b, in the ends thereof in any known manner, then forming each end of the hammock by drawing the cord, E, from which the hammock end is to be made, in a straight line through the end loops, b, b, of the hammock body, and in then drawing said cord from between said end loops, b, b, forming of it the converging strands of the hammock end, and in finally uniting these strands into a terminal eye, i, substantially as herein shown and described. (2) The art of making hammocks which consists in forming the hammock body with loops, b, b, in the ends thereof in any known manner, then forming each end of the hammock by drawing the cord, E, in a straight line through the loops, b, b, that are at the ends of the hammock body, D, in then drawing this cord out from between the end loops, b, b, and holding it temporarily, in then coiling or winding the outer part of this cord, and in then forming from this coiled or wound portion the eye, i, at the end of the hammock, substantially as herein shown and described."

Arthur v. Briesen, for complainant.

Frederic H. Betts and William B. Whitney, for defendant.

COXE, District Judge. The earlier patent, No. 277,161, relates to a new process of making the bodies of hammocks. Prior to the invention this had been done by weaving the thread in both directions between the supporting frames. The operator, provided with a shuttle on which the thread was wound, began at one end of the selvage and interlooped this thread with the thread attached to the selvage until she reached the opposite end of the frame when she repeated the same interlacing process back again, and so on from one end of the frame to the other, until the hammock body was completed. This operation took considerable time. It is estimated that an hour and twenty minutes was consumed in weaving one hammock body. The inventor reduced the

operator's manipulation about 50 per cent. by laying a strand straight across from frame to frame and weaving that strand into the hammock body. Instead of weaving each time she crosses from frame to frame, as in the old method, the operator now weaves every other time only. The work of the shuttle is thus reduced from two trips to one. That this saves time is manifest. Precisely how much time is saved is not established. The test made by the complainant's expert is not a demonstration. If he be right in his estimates, the invention increases the production threefold. The defenses are lack of utility, novelty and invention and noninfringement.

As to the first of these defenses it is only necessary to suggest that a process which is used by both parties in preference to any other —a process which saves time and money—can hardly be said to be useless. Regarding the other defenses, it is well to start with the undisputed proposition that Rood was the first to use this process in hammock making. Indeed, so far as this record shows to the contrary, he was the first to use the process for any purpose. The exhibits which are proved do not anticipate and the exhibit which comes nearest to an anticipation is not proved. The extract from the "Handbook of Point Lace" cannot be considered. The book from which it was taken is not in evidence, and it is said that it does not give the date of publication. The only evidence regarding it is a certificate from the commissioner of patents that the extract is a true copy from the bound volume in the library of the patent office and that "said publication was received in the library June 9, 1882." Assuming that the commissioner can certify the contents of the books in his library it is very clear that the date of publication cannot be established in this way. The extract describing the Touché process must, for this reason, be laid out of the case. The other exhibits do not touch the process claim. It is apparent, therefore, that there is nothing, so far as the prior art is concerned, which in any way affects the claim in question. Furthermore, there is no reason why the limitations of the product claim should be imported into the process claim.

Rood, being the first in this particular branch of industry, is entitled to a liberal construction,—a construction which will enable him to hold the fruits of his invention. So to construe the claim that an infringer is able to take the only valuable feature of the invention, is to do injustice to the inventor. There is no doubt that the claim—in the light of the severe criticism to which it has been subjected—might have employed more perspicuous language. It is, however, no easy task to describe the method of the patent in language which is perfectly clear. The subject matter is intricate and complicated. It is figuratively as well as literally a mass of network. If anyone doubts the truth of these observations let him attempt, with nothing but the hammock body and the drawings before him, to describe and claim the patented method. It is possible that the court, should it set to work deliberately to destroy the patent, could arrive at a construction which would accomplish this result; but this should not be done in any case,—certainly not in the case at bar.

It is thought that no skilled hammock maker, reading the claim in connection with the description, can fail to understand the process described. He would see at a glance that the new departure—the root idea of the new method—consists in the introduction of the straight strand with its consequent saving of time and money. That the defendant adopts this feature is conceded; but it is argued that it does not use the process in the precise way described by the inventor. It has boldly and unhesitatingly appropriated Rood's method, but it is said that it was one adopted by him after the date of the patent and, therefore, not covered by it. It appears that almost from its inception the inventor was endeavoring to improve his process; that improvements were made in 1884, and again in 1889, when the improved method was adopted which is now practiced by both complainant and defendant. It is not necessary to describe this method. The changes do not go to the essence of the invention. It is a more convenient way of practicing it and produces a hammock body having a more symmetrical appearance, but the essence of the invention is in this method precisely as in the method described in the patent. The defendant, having appropriated this method, is not exculpated because it has used it in connection with improvements subsequently adopted by the inventor. Sewing-Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299; Proctor v. Bennis, 36 Ch. Div. 740; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970; Machine Co. v. Murphy, 97 U. S. 120, 125; Winans v. Denmead, 15 How. 330; Blanchard v. Reeves, 1 Fish. Pat. Cas. 103, Fed. Cas. No. 1,515.

The patent No. 296,460 relates to a new method of making the ends of hammocks—attaching the converging strands to the completed hammock body. Previous to the inventions this had been done by winding the end cord around a shuttle and carrying the cord by means of the shuttle through a loop of the hammock body, thence around a pin fixed at the desired distance from the hammock body, back again through another loop and so on, back and forth through a loop and around the pin, until all the loops had thus been taken up. The patentee dispenses with this tiresome and expensive process. He draws the end of a cord, which he takes from a large reel, through all the end loops of the hammock body and from thence to a fixed pin to which the cord is tied. He then draws the cord from between the loops and lays it over two fixed pins and so on until the cord has been so drawn from between each of the loops; the reel permitting the cord to run easily through the loops. When all the loops have been thus connected the cord is cut, the other end is released from the pin, the two ends are united, and the strands between the pins are wound and formed into an end loop ready for use. There is evidence that this method is simpler and more rapid than the old one; that by it an inexperienced operator can make four or five times as many hammocks as an experienced operator can make by the old method. It saves time and money. Nothing like it was ever done before. The defenses are lack of invention and anticipation. Infringement is not denied.

The contention that the patent is anticipated is based upon the

alleged prior use of Louis Heinze. It is unnecessary to discuss this testimony. Suffice it to say that the only proposition which it establishes beyond a reasonable doubt is that it is absolutely untrustworthy. It is so full of contradictions, inaccuracies and tergiversations; so permeated with venality; so honeycombed with falsehood,—to use no harsher term,—that the court cannot for a moment think of basing any finding thereon injurious to the patent. This defense has been so often and so lately considered by this court that it is unnecessary to dwell upon the rules which require the court to disregard it now. Simmons v. Oil Co., 62 Fed. 928; Oval Wood Dish Co. v. Sandy Creek Wood Manuf'g Co., 60 Fed. 285; Sessions v. Gould, Id. 753; Carter v. Wollschlaeger, 53 Fed. 573; Mack v. Manufacturing Co., 52 Fed. 819; Electrical Accumulator Co. v. Julien Electric Co., 38 Fed. 117, 127; Thayer v. Hart, 20 Fed. 693.

Does the patent disclose invention? The process is a simple but ingenious one which would not have occurred to the skilled hammock maker even if he had before him all the nets, glove fasteners, ship's tackle, bed bottoms and lawyers' bags of the prior art. He would have continued to use the old shuttle in the old way. True, the patentee "struck" the process at once. But nothing unfavorable to him can be predicated of this fact. Indeed, the contrary is true. Many of the great inventions have come like a flash. The conception has been instantaneous, although the embodiment may have taken more or less time according to the character of the invention. Such ideas, involving an entire change of methods, whether they come quickly or slowly, always come to inventors. They never come to mere mechanics. The invention is not a great one, but it would be a step backward for the court to hold that the ingenious process which has done so much to advance the art of hammock making only involves mechanical skill.

It follows that the complainant is entitled to the usual decree.