Coxe, District Judge.
This action is founded upon two letters patent Nos. 268,112 and 399,543, granted to complainant for improvements in opera-glass holders and dated, respectively, November 28,1882, and March 12,1889. The decision in Mack v. Levy, 43 Fed. Rep. 857, establishes the following propositions: First, that the patent of 1882 must be narrowly construed because of similar structures made by one Stendicke; second, that even when so limited it discloses a patentable invention; third, that the claims must be strictly confined to the clutching device described; fourth, that the fourth and sixth claims which cover this clutching device were the only claims infringed; fifth, that the fourth and fifth claims of No. 399,543, the ones involved, if they describe an invention at all, must be limited to a handle in telescopic sections having a longitudinally forked attaching device at the end of the upper section; sixth, that so construed the said claims were not infringed. ' These propositions, so far as applicable to the present controversy, must be regarded as settled law.
A different state of facts is, however, presented by the present record. The exhibits introduced by Stendicke were constructed in 1890, in supposed resemblance to a cane made in 1856, and an opera-glass holder made in 1862, over a quarter of a century before. In the case of Mack v. Levy, there was nothing to throw discredit upon the testimony of this witness and it was taken for granted that the exhibits fairly represented what he had made 28 and 34 years before. Upon the present record, however, this evidence must be disregarded. The situations are very different. The witness has reached that period of life when his faculties, necessarily, must be somewhat impaired. That a person, 72 years of age, should be able to recollect the minute details of a tool made by him when he was 38, would, in any circumstances, be extraordinary. But should it appear that during this long interval he had been constantly engaged in working at his trade—making hundreds and probably thousands of optical instruments—should it be shown also that nothing had .occurred for 30 years to direct his attention to the particular tool in question and that the case is barren of the slightest circumstance to aid or refresh his recollection, such an exhibition of memory would be amazing, if not miraculous. If any one doubts this let him attempt to recall the minute details of a trivial event which occurred in his daily vocation 30 years ago. A conveyancer who should swear to the minutise of a deed which he drew in 1862 and has not seen or thought of since, would be doing no more than Stendicke has attempted. If the conveyancer had made an opera-glass holder or the optician had drawn the deed the task would be less difficult, for each act would be unusual and out of the ordinary course of business. But is it probable that any human intellect can retain with accuracy for 30 years the petty details of an eventless and humdrum occupation? It is, of course, possible that such testimony may be true, but the chance that it may not be true should be sufficient to deter a court of equity from striking down a valuable patent upon the strength thereof alone.
*821 Not only is Stendicke’s story inherently improbable, it is wholly without corroboration. True, a son of the witness was asked if he had an indistinct recollection of his father having made the Jarvis holder and he answered, “Yes.” It appears, however, that the Jarvis holder was made, if at all, two years before the son’s birth. Although the son may have inherited a memory of phenomenal power and capacity it would be hardly safe to trust it as to events which occurred two years before he was born.
There is no proof that the holder was ever put to practical use and the description of both exhibits is inaccurate and uncertain. In short, Stendicke’s story is replete with contradictions and inconsistencies; it is a bewildering snarl of improbabilities. It would be too harsh to say that the truth is not in it; enough that the court has not the necessary analytical capacity to extract the truth from it. Even the most favorable view of Stendicke’s testimony leaves the matter in doubt. It is wholly insufficient to carry conviction to the mind that the witness in 1862 made a structure like the one which, for the purposes of this controversy, he constructed in 1890. Nothing can be more certain than this. A fair doubt as to its reliability is always sufficient to dispose of testimony of this character. Such a doubt exists here. It is unnecessary to find, therefore, that the testimony is untrue; it is enough that it is unreliable. All that the court says upon this subject in the Barbed-Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. Rep. 443, is applicable here. I am familiar with no case where the court has overthrown a patent upon the unsupported statement of a witness as to acts done by him 30 years before in the ordinary course of business, especially when his story is inherently improbable and is contradictory in several important particulars. Coffin v. Ogden, 18 Wall. 120; Telephone Case, 126 U. S. 546, 8 Sup. Ct. Rep. 778; Tatum v. Gregory, 41 Fed. Rep. 142; Electrical Co. v. Julien Electric Co., 38 Fed. Rep. 117, 127; Thayer v. Hart, 20 Fed. Rep. 693, and cases cited.
The Stendicke exhibits being out of the case, there is nothing which anticipates or materially limits the scope of the patent. A great number of patents and exhibits have been introduced, but it is thought that a fair summary of the prior art is that it shows each element of the combination separately, but not the combination itself.
The question of patentable novelty is not an open one; it has already been decided in favor of the complainant and that, too, when the invention was confined within much narrower limits than now. That there was a display of the inventive faculties can hardly be doubted.
The contention that an examination of the mirror holders, monkey-wrenches, car-couplers, gun-wipers, tooth-brushes and mops of the prior art would suggest to the skilled mechanic the telescopic, detachable opera-glass holder of the patent, cannot be maintained. The skilled mechanic might study them till doomsday and he would not think of it. Brains were necessary, not hands only, to connect a car-coupling tool or a tooth-brush with an opera-glass. To do this required thought—an exercise of the inventive faculties — which a mechanic does not possess. *822 The suggestion that any one could have done what the complainant did recalls the reply made by Charles Lamb to the young pedant who declared that he could write like Shakespeare if he had a mind to. “Yes,” said Lamb, “if—you—had—the—mind—to.”
Mack was the first to produce a detachable, telescopic opera-glass holder. His was the first patent ever granted for such a structure. The detachable holder has become popular. Vast numbers of them are sold. All prominent opticians and jewelers keep them in stock. They may be seen at every playhouse. The complainant having conceived this new thought and embodied it in a practical device should be entitled to the rewards of his genius and labor. There can be no justice in restricting him to a construction which enables every one, who has sense sufficient to substitute a different clutch, to pick and plunder the patent with impunity. It is thought then that the patent, covers any detachable telescopic opera-glass holder having at the upper end a clutch or fastening device adapted to clasp the transverse bars or cylinder of an opera-glass. Whether it covers others structures it is unnecessary to decide in this suit.
I do not understand that defendants are charged with infringement of the first claim. The claim is almost broad enough to carry out the patentee’s expressed desire “to claim broadly holding an opera glass to the eyes by means of a handle attached thereto.” It covers a detachable handle no matter of what construction and without regard to the place where it is fastened to the glass or the manner of its fastening. Substantially the same criticism can be made of the second and third claims. The fifth and sixth claims are restricted in terms and it is at least doubtful whether they are infringed.
■ The fourth and seventh claims describe and claim the invention with sufficient accuracy and both are infringed. They are as follows:
“(4) The combination with an opera glass, A, of the handle, B, in sections, as described and arranged, to close telescopically, the end section thereof provided with a fastening device or clutch in the manner set forth.” “(7) As an article of manufacture an opera-glass handle made in sections and provided at its end with clutching devices, substantially as described.”
Each of these claims, when construed in the light of what has been said heretofore, describes a detachable, telescopic opera-glass handle with a fastening device at the upper end to clutch one of the transverse bars or cylinder of the glass. The three holders of the defendants have all of these elements and both claims are infringed by each one of these holders.
Regarding the patent of 1889 but little need be said. The holder therein described is the holder of 1882 with corrugations on the telescopic sections to prevent twisting and with a longitudinally forked attaching device substituted for the clutch of the prior patent. The court, in Mack v. Levy, decided that there was nothing patentable in applying well-known frictional devices to the telescopic sections. This leaves nothing but the longitudinally forked end. If invention resides anywhere in the patent it must be found in the fastening mechanism. In *823 his former patent the complainant seems to recognize that this was . only substituting one well-known fastening for another, for he says, “It is evident other forms of clutches and fastenings may be made within wide scope, as I do not wish to confine myself to fastenings shown.” This proposition is unquestionably true. Mere changes of form in the clutching mechanism which produce no new result would readily occur to the skilled mechanic. The prior art is full of similar forks; they are even shown as applied to opera glasses. Indeed, it would seem that the idea might have occurred to any one who had seen an old fashioned clothespin. The first claim has an additional element—a tube or socket—but the defendants are not charged with infringing this claim. It follows that the complainant is entitled to the usual decree upon claims 4 and 7 of the patent of 1882.