LALANCE & GROSJEAN MANUF'G CO. v. HABERMANN MANUF'G CO.

(Circuit Court, S. D. New York. December 22, 1892.)

1. PATENTS FOR INVENTIONS—SUFFICIENCY OF SPECIFICATIONS—DESCRIPTION.

The first claim of letters patent No. 279,094, issued June 5, 1883, to Emile Kegreisz, covers an improved process of giving a variegated appearance to the ornamentation of enameled ironware, by recoating it with a colored liquid after it has been enameled in the usual way. In the specification the process is described as follows: "After the ordinary process of enameling has been completed, I prepare a thin glaze composed of any coloring matter that can be made to remain mechanically suspended a short time in water, and apply it to the article. * * * The glaze should be made sufficiently thin to avoid being pasty, so that it will freely spread or run over the surface. * * * The glaze will be found to separate and coagulate in irregular spots," etc. *Held,* that the patent is not invalid for insufficiency of description, in that it does not state that the enamel must

be coarse ground, so as to remain but a short time mechanically suspended; for one skilled in the art would know that the result could only be obtained by the use of coarse-ground enamel.

**2. SAME—INVENTION.**

In view of the fact that Kegreisz was the first to perfect the art, and make it a commercial success, and that the goods are pleasing and ornamental, and have become popular with the public, it must be held that the discovery of the process involved the exercise of inventive faculty.

**3. SAME—ANTICIPATION.**

Anticipation of the patent by the Vollrath process was not sufficiently shown, the evidence thereof being that of witnesses who attempted to describe a complicated process practiced by them 10 or 15 years ago, and who did not agree as to the composition of the enamel then used, or the object they had in view; and it appearing that the results produced by that process were crude and ungainly, and that Vollrath himself, in his 1881 patent, stated that the mottled appearance was due to an oxidation of the metal surface during the operation of drying, (a process entirely foreign to that of the patent,) and it also appearing that he is himself a licensee under the patent,—a position wholly inconsistent with the theory that he was the first inventor.

**4. SAME—INFRINGEMENT.**

The claim is infringed by one who employs the same process, although he adds thereto another step, namely, that of shaking the article after it has been dipped in the glaze, in order to hasten the process of accumulating the particles to produce the mottled appearance, since this kind of manipulation was well known in the art of enameling.

In Equity. On final hearing. Bill by the Lalance & Grosjean Manufacturing Company against the Habermann Manufacturing Company for infringement of a patent. Decree for complainant.

Arthur v. Briesen, for complainant.
Robert N. Kenyon, for defendant.

COXE, District Judge. The complainant sues for the infringement of letters patent No. 279,094, granted to Emile Kegreisz, June 5, 1883, for an improvement in the ornamentation of enameled iron-ware. The invention consists in an improved method of giving a variegated appearance to the ware, by recoating it with a colored liquid after it has been enameled by the usual method. By this process imperfections are concealed, and an irregularly mottled, wavy appearance is imparted to the article recoated, which enhances its beauty and value. The specification describes the process as follows:

"After the ordinary process of enameling has been completed, I prepare a thin glaze, composed of any coloring matter that can be made to remain mechanically suspended a short time in water, and apply it to the article, preferably either by immersing the latter in a tank containing said glaze, or by pouring the glaze upon the article. The glaze should be made sufficiently thin to avoid being pasty, so that it will freely spread or run over the surface. After the article has been submitted to the second bath of thin glaze, the latter will be found to separate and coagulate in irregular spots upon the smooth surface formed by the first coating of glaze. * * * After the application of the glaze, the article is placed in a drying oven heated to a temperature of about 130° Fahrenheit, and is kept there until the glaze is approximately dry, when it is removed to the oven or muffle employed in the well-known enameling processes, where it is a second time fired, as in the usual process of enameling."

The claims are:

"(1) The hereinbefore described process of enameling and ornamenting metal ware, which consists in first covering the body of the article with a glaze of any suitable plain color, firing the same, then applying to the surface an additional coating or partial coating of glaze, of a different color from the first, the glaze constituting the second coating or partial coating being of such a consistency as to coagulate in irregular spots upon the surface, and again firing, as set forth. (2) As a new article of manufacture, an enameled vessel presenting a mottled or variegated surface of two or more colors, produced by the coagulation in irregular spots of one or more of the coatings of glaze, substantially as set forth."

The principal defenses are, insufficiency of the specification, anticipation, want of invention and noninfringement. The proof shows that in order to produce the mottled appearance referred to the enamel must be ground coarse, and the defendant argues that the specification is defective because it omits all reference to coarse grinding. The argument in this regard is admirably summarized in the defendant's brief as follows:

"The patent says that all that is necessary is a thin glaze. There is no suggestion that it is to be ground in any different way from ordinary glaze. Ordinary glaze is ground fine. Any person reading the patent, and finding that nothing was said in the patent to the effect that the glaze should be ground differently from ordinary glaze would naturally grind the glaze fine. If he did so it is admitted that he could not carry out the process of the patent in suit. He would be left to find out by experiment what else was necessary. He might discover that coarse grinding was necessary and he might not."

The paragraph of the specification which is pointed out as particularly imparting the desired information is this: "I prepare a thin glaze composed of any coloring matter that can be made to remain mechanically suspended a short time in water." That this statement is not as perspicuous as it might be may as well be admitted. Undoubtedly Irving or Hawthorne could have done better. But the description is not addressed to rhetoricians or lawyers, but to enamelers. I am inclined to think that a competent enameler, reading the language quoted in the light of the avowed purpose of the patentee to produce irregular spots upon the smooth surface formed by a coating of enamel applied in the ordinary way, would have little difficulty in finding the patented process. He would know, first, that the second glaze must differ from the first glaze; second, that it must be capable of separating and coagulating in irregular spots; third, that it must be thin, and, fourth, that the coloring matter must remain mechanically suspended a short time in water. When to the information of the patent he added the information of his vocation—that fine ground enamel remains suspended a long time in water and that coarse ground enamel remains a short time only—it would naturally occur to him that a glaze that would coagulate, that was thin, that contained coloring matter which would remain suspended a short time, must be made with coarse-ground enamel. If the specification had declared that the enamel was to remain suspended "only a short time," the description would have been sufficient. This is hardly denied. One familiar with the art would, it is thought, have no difficulty in supplying the missing word. The sentence so constructed obviously expresses the meaning of the patentee. It is argued by the defendant that the true construction should be: "I

prepare a thin glaze composed of any coloring matter that can be made to remain mechanically suspended at least a short time in water." That is to say, the patentee informed the skilled operator that he must use enamel that may remain suspended for hours, but must remain, at least, for a short time. If it sinks immediately to the bottom it will not do. This contention would be more plausible if enamelers had been in the habit of using powders which sank immediately when placed in water, but they had not. They were not familiar with such coloring matter. The powder ordinarily used by them was very fine, almost inpalpable, and remained suspended a long time. "The main object in enameling always was to grind enamel as fine as possible." If the patentee had thought that his process could be practiced by using the old and well-known coloring matter he would have said nothing on the subject. It was not necessary to guard enamelers against the use of powders that sank too soon, but against those that did not sink soon enough. It was the use of powders that remained too long suspended—the only ones then employed—that the patentee wished to prohibit. The skilled workman reading the patent would, then, have reached the conclusion that he must use coloring matter which will remain suspended but a short time. He knew that the only way to produce this result is to grind the enamel coarsely. The patentee is criticised because he did not say this frankly. He should, it is argued, have made the plain statement, "The enamel must be ground coarse." But this would have subjected him to other attacks equally well founded. "What is meant by 'coarse?'" "How coarse should the enamel be?" "By what standard is the workman to be guided in grinding?" Is it not probable that all this occurred to the patentee or his solicitor, and that he thought he had taken the wisest and safest course when he said that any coloring matter that remains mechanically suspended a short time will answer the requirements of the patent? May he not have thought that he was thus furnishing an infallible and uniform rule for guidance of the grinder? Where a patentee has made a meritorious invention the court should not be overzealous in trying to defeat him by an illiberal construction of the patent. On the contrary the court should seek a construction which gives life to the patent and protection to the inventor. I am, therefore, of the opinion that the specification, though it might have been more specific, is still sufficient.

Is the patent anticipated by the Vollrath process? In considering this question it is well to keep in mind the rule upon this subject. He who alleges prior use must establish it by the same high class of testimony which a prosecuting attorney is required to produce in a criminal cause. He holds the affirmative of that issue and must prove it beyond a reasonable doubt. If the evidence is susceptible of two interpretations, the one sustaining and the other destroying the patent, the court must accept the former. See authorities cited in Mack v. Spencer Manuf'g Co., 52 Fed. Rep. 819. Without discussing the testimony in detail, the reasons which led the court to reject it, as failing to establish anticipation, may be briefly summarized as follows:

First, the witnesses were attempting to describe a complicated process practiced by them from 10 to 15 years ago. The infirmities of the human memory are such that perfect accuracy in such circumstances can hardly be expected.

Second, the witnesses do not agree as to the important steps of the process, the composition of the enamel or the object they had in view. Vollrath himself, who should be informed upon the subject, describes a process very different from that of the patentee.

Third, the specimens of the Vollrath process introduced in evidence are crude and ungainly. They are no more to be compared to the beautiful and artistic exhibits said to be made by the Kegreisz process than the scenery of a theater is to be compared to the Sistine frescoes.

Fourth, the statement made in Vollrath's patent of 1881, that—

"In all known processes the marbled, mottled, or spotted appearance of the enameled surface is caused by the oxidation of the metal surface during the operation of drying the enameling composition thereon."

Is it possible that he could have made such a statement if the Kegreisz process had been known and practiced by him four years before?

And, lastly, the fact that Vollrath is a licensee under the Kegreisz patent, which would seem wholly incompatible with the theory that Vollrath and not Kegreisz was the first inventor.

None of the prior patents or publications describes the patented process, or advances perceptibly the defendant's case from the point where it was left by the Vollrath testimony. They all describe methods of producing pleasing effects in enameling, but they proceed upon different lines from the Kegreisz process.

Does this process involve invention? One way to test invention is this: Imagine the art with the contribution made by the patent entirely eliminated from it. Blot out all that the patentee has done, and then ask the questions, Has the world lost anything? Is the art poorer than it was before? Can mechanical skill make good the loss? If it appears that the public has been deprived of something which it used, admired, and demanded, and that there is nothing else in existence which can be substituted for that which has been taken, it is quite safe to assume that the patentee has made an invention.

Apply the test here. Take out of the art what Kegreisz has done, and it is plain that a void would be created that could not be filled by anything that Vollrath or the others have contributed. Kegreisz was the first to perfect the process and make it a commercial success. The goods made under it are pleasing and ornamental in appearance, and have become popular with the public. Against all that is said in hostility to the patent may be set the fact that those operating under the Kegreisz process were the first to make an assured success in this art. Nothing made before is worthy to be compared in beauty of ornamentation to the articles made by the complainant. It would be running counter to the recent decisions of the supreme court to deny patentability to the Kegreisz patent.

Infringement is sufficiently established. It is admitted that the articles introduced to establish infringement were made by the defendant. The process used by the defendant is the same as that described in the patent, with one step added which is not described. After the vessel to be enameled has been dipped in the glaze the operator shakes it, and by this means produces the desired result quicker than when the shaking is omitted. That the process can be practiced without this additional step is sufficiently demonstrated. It was a well-known fact among enamelers that this manipulation would save time, and it is thought that one who applies it to the process in question does not thereby escape infringement. He does not use the process any the less because he uses something in addition to the process. Even if it be assumed that the defendant has introduced an improvement, it is an improvement upon the Kegreisz process, and so long as the defendant uses that process it must be treated as an infringer.

The complainant is entitled to the usual decree.

