## SINGER MANUF'G CO. v. SCHENCK.

(Circuit Court, S. D. New York. May 22, 1895.)

1. PATENTS—PRIOR USE—ADMISSIBILITY OF EVIDENCE.

Affidavits made by witnesses more than 10 years before the hearing, in respect to the details of construction of a machine which they had not seen for nearly 20 years prior to the date of the affidavits, are not admissible as evidence, when, after reading the same, the witnesses disclaim any present recollection of the features of the machine, and merely say that, if they swore to the affidavits, they were true.

2. SAME—PRIOR USE—EVIDENCE.

The defense of prior use cannot be sustained upon the testimony of witnesses who attempt to describe the details of a machine from memory after the lapse of nearly 30 years, where their statements are vague, uncertain, and contradictory. To sustain the defense, the evidence in support of it should be so strong as to exclude every reasonable hypothesis that the structure was of an experimental and tentative character.

3. SAME—SEWING MACHINES.

The Miller and Diehl patent, No. 224,710, for an improvement in band-wheel bearings for sewing machines, held not invalid on the ground of prior use, and held infringed.

This was a bill by the Singer Manufacturing Company against Allen Schenck, president of the New Home Sewing-Machine Company, for alleged infringement of a patent relating to an improvement in sewing machines.

This action is founded upon letters patent No. 224,710, granted February 17, 1880, to the complainant, as assignee of the inventors, Miller and Diehl, for an improvement in band-wheel bearings for sewing machines.

The specification states as follows: "The object of our invention is to do away with the rattling of the band wheel and to reduce the friction, also to simplify and condense the parts, lessening the cost and avoiding the complications of the anti-rattling journals in use. * * * On band wheels as formerly constructed, having a bearing on a stud, the pitman was applied outside the bearing, causing a side or jamming movement and excessive wear and lost motion. In our improvement the power is applied at the center, and the pressure is always directly upon the bearings, so that there is no tendency to a side or jamming motion, and the friction and wear are consequently re-

duced to the least amount. The crank is supported at one end by the central brace, and at the other end by one of the side pieces of the frame. By this arrangement a great advantage is obtained, as the crank presses down in direct line both upon the side of the frame and upon the central brace, thereby equalizing and distributing the weight throughout the entire frame without any lateral pressure whatever or any tendency to sag or break the side piece, E, or to rack the frame when the machine is in operation. The crank also is thus very much shorter than if extended the whole length of the frame as formerly, and the cost, friction, and wear are proportionally reduced. The bearings also being conical instead of straight, the end play of the crank is prevented, and an adjustment for wear and lost motion may be readily made by means of a set-screw on the central brace or on the side piece, or on both the central brace and the side piece, or by the use of an adjustable lug or bearing upon the central brace or the side piece, substantially as at H, Fig 1."

FIG. 1.

The first and second claims only are involved. They are as follows: "(1) In the frame of a sewing machine, the central brace, A, as a support or bearing for one end of the crank, C, operating either in direct contact with the said central brace, A, or connected therewith by means of an adjustable lug or bearing, substantially in the manner and for the purposes described. (2) In the frame of a sewing machine, the crank, C, having the conical bearings $s$ $s^1$ $s^2$ $s^3$, in combination with an adjustable lug or bearing on the central brace, A, or on the side piece, E, substantially in the manner and for the purposes described."

The defenses are noninfringement, if the claims are narrowly construed, and anticipation by a structure made by one J. E. Burdge, of Cincinnati, Ohio. prior to 1864.

Livingston Gifford, for complainant.

John Dane, Jr., for defendant.

COXE, District Judge (after stating the facts). The important question in this cause is whether or not the invention is anticipated by the Burdge structure alleged to have been made about 30 years ago. This was the principal question discussed at the argument, and, although other defenses are suggested in the defendant's brief, there can be little doubt that the complainant is entitled to a decree if the Burdge defense is removed from its path. Invention is established and infringement is hardly disputed. The Burdge machine is said to have been invented by Jonathan E. Burdge some time during the war of the Rebellion and prior to 1864. The burden of establishing this defense rests heavily upon the defendant; it must be proved beyond a reasonable doubt. The wisdom of this rule was never more apparent than in the present case. The difficulty, if not the impossibility, of procuring accurate oral testimony regarding commonplace events occurring 30 years ago, is obvious to all. The exhibit "Burdge Sewing-Machine Stand" was used for many years as a flower stand in the dooryard of J. E. Burdge at Home City, near Cincinnati. When resurrected for the purposes of litigation it was merely an iron frame consisting of two side pieces connected with a saw-buck brace. Between one of the legs and the brace there was a crank shaft with a U-shaped crank, one end being mounted in a boss cast upon the machine leg and the other in an adjustable bearing screw which was held in place by a lug screwed to the cross brace. This was all. There was no table, treadle, pitman, band wheel or band. Some boards had been laid over the iron frame, and for many years it had stood outdoors as a stand for flower pots. If this structure were ever used in connection with a sewing machine, it must have been prior to or during the early part of 1864. No one pretends to have seen it so used after that date.

The testimony offered upon this issue is exceedingly voluminous, but it will only be necessary to state generally the reasons for the conclusion reached. Affidavits made in 1883 by two of the defendant's witnesses, Olive Burdge and James Skardon, were offered in evidence under objection. These affidavits were clearly inadmissible. Assuming that papers made 20 years after the event can in any view be used to refresh the recollection of a witness, these affidavits certainly could not be so used, for both witnesses disclaimed any present recollection of the important features of the Burdge machine

even after reading the affidavits. All they could say was that if they swore to the affidavits they were true. When they testified in this cause their minds were blank upon all important matters in controversy. There is no theory upon which the affidavits are competent. Without them the testimony of the witnesses is too indefinite and uncertain to sustain any finding of fact. Mrs. Martha Cole, another of defendant's witnesses, was shown the "Burdge Sewing Stand," and was asked when before she had seen a stand of the same construction. Her answer was, "I recognize the stand as the same one we had at home during the war." It is not pretended that she had the identical stand. What she meant was that she had one of the same construction. Mrs. Cole's mother did have a Burdge sewing machine during the war, but Burdge took it back in less than a year for nonpayment of the purchase money, and the witness never saw it thereafter. Mrs. Cole was between 13 and 14 years of age when the machine was at her home. Her attention was not called to the feature here in controversy, and all she was able to say was that the stand shown her in 1892 was of the same character as the stand seen by her 30 years before. Of course this proves nothing. Even had her attention been called to the crank shaft, and she had testified that it was like the crank shaft of her mother's machine, it would have been entitled to little weight. It is doubted if a single sewing woman in the country can recall the minute details of the driving gear of a sewing machine which she has not seen for 30 years. That part of the mechanism above the table to which her attention is constantly called she might possibly remember, but the particular construction of the crank shaft and its bearings would make only a fleeting impression on her mind. The probability is that she would not examine it at all, and if she did she would not retain such distinctions as we are here dealing with in her mind for a single day. Mrs. Cole says nothing that aids the defendant; the circumstances were such that she could say nothing. Human memory is incapable of performing such miraculous feats. Let any one skeptical on this subject test it by attempting to describe the details of construction of a complicated machine to which his attention was never particularly called and which he has not seen since 1865. No matter how retentive is his memory, he will probably find that certainty and accuracy are simply out of the question.

This leaves the Burdge prior use to depend upon the testimony of one witness—William M. Burdge, a son of the alleged inventor. The considerations to which allusion has just been made apply to this witness as well. If the court is to overthrow a patent upon the testimony of a single witness as to events happening 30 years ago he should be a witness in whose word the court can place implicit reliance. If for any reason the court is in doubt as to the truth of his testimony the defense must fail. The court is now in doubt, and the reasons therefor may be summarized as follows:

First. The witness was but 16 or 17 years of age when he worked at his father's shop, and he was only there about a year. For the reasons already stated, it is hardly possible, in such circumstances, that minute details can be accurately remembered. Indeed, the sit-

uation in this regard cannot be stated more fairly than by the witness himself. He says: "Of course, I assisted on all the machines, and I can't recollect one part any more than another unless the part were shown me to refresh my mind." And, again: "I cannot remember every detail of every or any one machine that was built thirty years ago, when I was about seventeen years of age."

Second. There are numerous contradictions and admitted errors in his testimony. These are not more numerous than would be expected in the testimony of any witness who attempted to describe a machine which he had not seen for 30 years, but they demonstrate how unreliable his memory is. For instance, how can the court find that he is right as to the crank shaft when he is clearly wrong as to the treadle rod?

Third. There is evidence inherent in the stand itself that it was never anything more than an experiment. There is no band wheel. This wheel has to be fitted on the crank shaft before the shaft is mounted in the bearings. If a wheel were ever on the shaft where is it? It could hardly have been broken off without leaving the hub at least. If the machine were dismembered, what possible reason could there be for carefully replacing the shaft in its bearings? The inference that the structure was an experiment is surely as plausible as that it was an operative machine.

Fourth. The presumption that it was never a completed machine may be drawn also from the following facts: The treadle was absent, and there was no hole in which to insert the pin which holds the treadle to the rod. There was no table and no marks indicating that the machine had been used. There was a hole on the left leg directly opposite the boss on the right leg, indicating that a crank shaft running clear across from leg to leg had first been used. There is also the presumption that if the machine had been made for sale the lug would have been cast on the brace, and not made of wrought iron and screwed to the brace.

Fifth. The brace and the adjustable bearing for one end of the crank shaft were improvements which made their appearance in the art after 1865. It is most unlikely that one man in 1863 should have hit upon a stand combining so many valuable features which were produced by the evolution of the art during a series of years by different inventors at different times and places. If these things were well known in 1863, is it probable that they would have lain dormant for half a dozen years? If the experiment were made in the 70's the appearance of these features would be natural enough, but their appearance in 1863, when the art was yet in its infancy, is certainly extraordinary. A structure which anticipated so many inventions would have been put to some nobler use than as a stand for flowers.

Sixth. Burdge can hardly be called a disinterested witness. He contradicts himself and is contradicted by others upon many material points. None of the parties to whom he says machines were sold have been found, and persons who would naturally know of the machines if they had existed never heard of them.

Many other considerations of a similar character tending to cast

suspicion upon the alleged prior use might be alluded to, but it is unnecessary to pursue the subject further. Enough has been said to demonstrate the proposition that the proof in support of defendant's contention is vague, uncertain and contradictory. It fails to carry conviction to the mind; difficulty is encountered at every turn.

The court approached this defense with every inclination to treat it with the utmost fairness. When, however, all has been said in its favor, there is still the ever-present doubt as to its verity. There is still the conviction that the court cannot be sure that a completed operative machine like the exhibit was made by Burdge prior to 1864, or that such a machine was ever made by him. The flower stand is a certainty; all else is uncertain. When, where, by whom and for what purpose the crank shaft was placed on the stand is conjectural. The moment the realm of speculation is entered several theories suggest themselves at least as plausible as that advanced by the defendant. In order to sustain this defense the court must find that the evidence offered in its support is so strong as to exclude every reasonable hypothesis that the structure was of an experimental and tentative character. Can the court find upon this proof that the Burdge flower stand was ever a part of a completed machine? Can it say this beyond a reasonable doubt? It is thought not. No authority has been found where a patent has been defeated upon proof so vulnerable. Something more than probability, certainly something more than possibility, is needed to anticipate a patent.

It is unnecessary to discuss the point suggested at the argument, because upon examination I am convinced that the structure when discovered as a flower stand had not reached such a point of completion as to warrant the inference which might, possibly, be drawn had some of the more important missing parts been present.

It follows that the complainant is entitled to the usual decree.