### YOUNG v. WOLFE.

(Circuit Court, S. D. New York. February 23, 1903.)

**1. PATENTS—DEFENSE OF PRIOR USE—MEASURE OF PROOF.**

The defense of prior use to outweigh the presumption of validity arising from the granting of a patent must be established beyond a reasonable doubt, in view of the liability to mistake, and the ease with which testimony in its support may be fabricated or colored.

**2. SAME—INFRINGEMENT—ABDOMINAL PAD AND STOCKING SUPPORTER.**

The Young patent, No. 638,540, for a combined abdominal pad and hose supporter, discloses patentable invention, and is not invalid for anticipation or prior use; also *held* infringed.

In Equity. Suit for infringement of letters patent No. 638,540, for a combined abdominal pad and hose supporter, granted to Ella Foster Young, December 5, 1899. On final hearing.

C. C. Linthicum and J. J. Kennedy, for complainant.
Robert C. Mitchell, for defendant.

COXE, Circuit Judge. This is an equity action for the infringement of letters patent, No. 638,540, granted to the complainant December 5, 1899, for a combined abdominal pad and hose supporter.

The invention has for its object the dual purpose of supporting the hose and maintaining a proper carriage of the body of the wearer. The abdominal pad is flat, with a smooth contact surface large enough to cover the upper central portion of the hypogastric region of the abdomen. The pad is supported by a strap passing around the waist of the wearer, the ends of the strap being secured to the upper portion of the pad. To the lower edge of the pad four hose supporting straps are connected, each being provided with a clasp at its lower end for engagement with the hose. These straps preferably have an elastic section and are adjustable as to length. In practice the pad is supported by the waist belt over the most prominent portion of the abdomen. The outside supporting straps are then clasped to the top of the hose just inside the knee and the inside straps are passed over the outside straps and are attached to the hose at the outside of the knee. The strain of the straps upon the pad and waist belt have the tendency to sink the abdomen, throw out the chest and cause the wearer to stand

¶ 1. See Patents, vol. 38, Cent. Dig. § 104.

·erect. The straps do not chafe or cut the person as they do not draw over the hips but in substantially vertical lines.

The patent has two claims, both are involved. They are as follows:

"(1) In a combined abdominal pad and hose supporter. the combination with a flat abdominal pad having a continuous integral body with a smooth unbroken bearing or contact surface and of a size about equal to that of the upper central portion of the hypogastric region, of supports attached to said pad at its upper edge and hose-supporting straps attached to the lower edge of said pad, whereby in use strain is applied to said pad in substantially vertical lines and the pressure is localized, substantially as described.

"(2) In a combined abdominal pad and hose supporter, the combination with a continuous, integral flat body having a smooth, unbroken bearing or contact surface, of a strap secured to the upper edge portion of said pad and adapted to pass around the body and having a fastening for attaching it to the upper edge of the pad, hose-supporting straps secured to the outer lower edge of said pad, extending thence downward in substantial parallelism and adapted to be connected to the hose on the inner side of the leg and other longer hose-supporting straps secured to the lower edge of the pad between the first-mentioned hose-supporting straps and adapted to be carried outward across them and to be secured to the hose on the outer side of the leg, substantially as described."

The defenses are insufficiency of the specification, anticipation, lack of patentability and prior use.

Infringement if not admitted is not seriously denied. The defendant's supporter is almost the exact counterpart of the complainant's. The only difference pointed out is that in the defendant's device the straps are attached in such a way that if each strap leads down to the hose in the line indicated, the supporter may be used without crossing the straps as suggested in the description and drawings of the patent. It is evident that defendant's counsel is not greatly impressed with the force of this contention for he says:

"If it is material to the patent in suit that the inner set of hose supporter straps shall cross over the outer set of straps then the defendant's hose supporter does not infringe."

The answer is twofold: First, it is not material; and second, the defendant's supporter can, by adjusting the length of the straps, be used in the precise manner pointed out in the patent.

The contention that the patent was surreptitiously obtained is based upon the theory that the Patent Office officials failed to understand the invention and were deceived as to its character by the patentee and her attorneys. The court has searched in vain for any facts to sustain this theory; on the contrary, an examination of the file wrapper shows that the patent received unusual attention and the most careful scrutiny in the Patent Office and that every feature of the invention was examined and clearly understood.

The criticism that the patent is vague, indefinite and fatally faulty in not disclosing to the public in clear and certain language the subject matter, which is now claimed to be the invention, cannot be maintained. The best answer is the specification itself. It is thought that no intelligent person, whether skilled in the art or not, can read the description in the light of the drawings and fail to comprehend the invention in all its aspects. A woman reading it would know not only how to make the supporter but how to put it on and wear it. Indeed, the invention is so simple and so easily understood that it seems amazing that so

much can be said about it. If the immaterial and irrelevant testimony were eliminated from the record it would be reduced in size at least one-half.

The utility of the patented device is established beyond question. It is in undoubted demand and, considering the comparatively brief time it has been on the market, it has attained a wide popularity. There is testimony from a number of women who, as wearers, have practical knowledge of the device, that it accomplishes all that is claimed for it in the patent, namely, it improves the figure, reduces the abdomen, helps the wearer to stand erect and is convenient and comfortable. This testimony is uncontradicted, but the attempt is made to break its force by subjecting it to theoretical criticism based upon unwarranted, or at least unproved, premises. In the face of the testimony of a number of intelligent and disinterested women that certain results are accomplished, the opinion of a man, even though he be an expert, that such results are impossible is not particularly persuasive.

Upon the question of utility the defendant's conduct furnishes a very strong presumption in support of the patent. If the device be not useful why does the defendant use it? If it be worthless and accomplishes no more than the old garter supporters, why does she not use the old garter supporters? No rational being would expend time and money for the privilege of using a worthless article.

The invention is not anticipated by any of the prior patents; no one of them describes a device which, if made today for the first time, would infringe the claims of the Young patent. Combined, these prior patents do not so narrow the field of invention as to invalidate the patent for lack of patentability. Although relating, in a sense, to the same art these patents deal with different situations and seek to accomplish different objects and purposes from those of the Young patent. They belong to the same genus, perhaps, but to entirely different species. They relate to abdominal supporters, sanitary belts, garment supporters, waists, corsets, suspenders and garters.

The nearest approach to the patent in hand is the patent granted to Hannah E. Rogers, in July, 1890, for an abdominal supporter. The patent describes a complicated harness, consisting of a belt, which may be drawn tight by lacing cords, and is to be worn by fat people "to relieve the oppression that is liable to occur from gravitation," or, in other words, to hold up the abdomen.

The hose-supporting straps do not and cannot perform the function of the Young patent, their office being to hold up the hose and necessarily, therefore, to hold down the belt. The Young device depresses the abdomen. The Rogers device raises it and makes it more prominent at the point where it is most conspicuous. Young supports the hose by straps from the pad, Rogers by straps attached to the front and back of the belt, thus exerting an entirely different strain or pull.

The examiners in chief carefully considered the scope of the Rogers patent and correctly describe it as follows:

"In the Rogers device there are no supporters at the upper edge of the pad and the strain is exerted in lateral or horizontal lines instead of in a vertical direction. The use of the hose-supporting feature in the Rogers

device is purely incidental, as is shown by the statement on page 1, lines 65 to 68 of the patent, while in the applicant's device the strain produced by the tension on the hose supporters is relied upon to produce the results desired."

It is unnecessary to consider the other patents in detail for the reasons stated. If the Rogers patent does not destroy the Young patent none of the others can do so. The court has examined these patents in vain to find any suggestion, much less an actual structure, which shows, or even hints at, the combination of the Young patent.

As before stated the invention is a simple one; it relates to an article of wearing apparel designed to promote the comfort and improve the appearance of women. If the inventor were the first to accomplish these results she is entitled to the same protection as if she had operated in a broader field and had conferred greater and more lasting benefits upon mankind.

It is thought that the question of invention is settled by two recent decisions of the Circuit Court of Appeals for this circuit which deal with similar devices, but devices which, it seems, called for less exercise of the inventive faculties than is found in the patent in suit. Parramore v. Taylor, 52 C. C. A. 45, 114 Fed. 97; Id. (C. C.) 105 Fed. 965; Frost v. Cohn (decided December 15, 1902, C. C. A.) 119 Fed. 505.

In approaching the defense of prior use the rule of evidence applicable thereto should constantly be borne in mind. The defense must be established beyond a reasonable doubt. The reason for the rule is obvious. It is so easy to fabricate or color testimony which lies almost wholly in the control of the person producing it, the infirmities of the human memory are so great and the liability to mistake so manifest, that the court is never justified in permitting such testimony to outweigh the presumption of validity which attaches to the patent unless it be of such a character as to carry a clear conviction and remove every reasonable doubt. This court has frequently had occasion to consider this defense and it is, therefore, unnecessary to repeat what has been often said heretofore. Thayer v. Hart (C. C.) 20 Fed. 693; Mack v. Spencer (C. C.) 52 Fed. 819; Lalance Co. v. Habermann Co. (C. C.) 53 Fed. 375; Singer Mfg. Co. v. Schenck (C. C.) 68 Fed. 191.

One of the alleged prior uses took place in 1871, over 30 years before the date of the witnesses' testimony, the other uses began in 1876 and have continued since that date, but the occurrences principally relied upon took place in 1887 and 1888, over 14 years prior to the date of the testimony.

A discussion of the testimony in all its aspects is unnecessary and will subserve no useful purpose; suffice it to say that it leaves the mind of the court in doubt upon the proposition whether a structure possessing the features of the Young supporter was made prior to 1897.

There can be no question that a number of highly respectable people swear not only that one and two, but many hundreds of such devices were made, but the testimony of these witnesses, as well as those offered in reply, abounds in contradictions, improbabilities and

suspicious omissions. The court cannot believe, as is intimated by
·both counsel, that any of these witnesses was intentionally untruth-
·ful. It is thought rather that the unsatisfactory character of the evi-
·dence is the natural consequence of an attempt to compel the human
memory to perform an impossible task. The situation developed
·is but a repetition of what always occurs in these cases and· demon-
strates the wisdom of the rule which forbids a finding of fact based
·upon testimony so uncertain.

In view of the success achieved by the Young device it is certainly
remarkable, if the same article were on the market since 1871 that
the production should have almost ceased at the date of the Young
invention.

Again, if the number sold at all approximated the number as stated
·it would seem that prior use might have been established without
the slightest question. The probabilities are all against the proposi-
tion that the Young device was widely known for such a long period
of time. When it is remembered that the market during all this
time abounded in articles for women's use which resembled in ap-
pearance the device of the patent it is not surprising that the witnesses
were confused as to details and may have honestly believed that the
things which they saw in 1871 and 1887 were identical with the Young
·device. That they were somewhat similar in appearance is quite
possible, but that they were similar in function and operation the
court cannot believe and is constrained to hold that the defense has
not been established.

It follows that the complainant is entitled to a decree for an injunc-
·tion and an accounting. ·