ATWOOD–MORRISON CO. v. SIPP ELECTRIC & MACHINE CO.

(Circuit Court, D. New Jersey. May 1, 1905.)

1. PATENTS—EVIDENCE OF PATENTABILITY.

The issuance of a patent is of itself evidence of the patentability, usefulness, and novelty of a device.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 53, 62.]

2. SAME—EVIDENCE OF PRIOR USE.

Evidence of prior use, to overcome the presumption of validity of a patent, must be clear and convincing in character and of weight sufficient to overcome every reasonable doubt.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 104.]

(Syllabus by the Court.)

In Equity. Letters patent No. 729,084 sustained on the evidence.

Charles Neave, for complainant.
Edward Q. Keasbey, for defendant.

CROSS, District Judge. The complainant corporation is owner of letters patent No. 729,084, which it alleges in its bill of complaint has been infringed by the defendant, and it asks for the usual relief in such cases. The complainant's title to said patent is unassailed, and its infringement is admitted. Indeed, the proofs show that the defendant copied its device after the complainant's and that they are practically alike. The patent in suit is for certain "new and useful improvements in swift-brackets," and its inventor described its purposes as follows:

"The object of my invention is to provide a bracket for supporting a swift for winding silk, cotton, or other threads or filaments. As commonly used the brackets supporting the swifts are rigid and not capable of adjustment. while the conditions of use require a vertical change of position of the swift in order to obtain the best results. * * * In the form of swift supports commonly used, the arm supporting the swifts is secured rigidly to the frame, and by my invention I have provided means whereby the swifts are adjustably supported in place on the frame, thereby securing better results in the winding operation."

There are five claims in the patent. Of these the complainant relies upon the first, second, and fourth only, as follows:

"(1) In combination in a winding-frame, a swift-supporting rail, a plural number of bases adapted to be secured to the rail, a swift-arm pivoted to each base at or near the rail, each arm having on its outer end means for supporting the ends of two adjacent swifts, and means for locking each arm against pivotal movement.

"(2) In combination with a winding-frame, a swift-supporting rail, a plural number of bases adapted to be secured to the rail and having means of adjustment lengthwise of the rail, a swift-supporting arm pivoted to each base at or near the rail, each arm having at its outer end means for supporting the ends of two adjacent swifts, and means for locking the arm against pivotal movement."

"(4) In combination in a winding-frame, a swift-supporting rail, a series of two or more bases adjustably mounted upon the rail, a swift-supporting arm pivoted to each base at or near the rail, each arm having at its outer end

recessed pockets on opposite sides to receive the swift-bearing of the ends of two adjacent swifts, and means for preventing pivotal movement of the swift-arm."

The patent, it may be said, is a combination of known elements; but this does not affect its validity, if the new combination and arrangement of such elements produces a new and beneficial result. The defendant corporation contends that the patent in suit is invalid because of the prior art, and seeks to show, not only that all of its elements had been embodied in combination in previous patents, but that similar devices had been made and sold for several years prior to the date of the patent in question, and consequently that the invention lacks novelty. In other words, it claims that any mechanic skilled in the art could have done exactly what the complainant's patentee did.

The testimony clearly shows that it is of great advantage to have the brackets which support the swifts adjustable. This is done by the complainant's device in two directions—vertically by having the arm pivoted near the base, and horizontally by means of a slot where it is attached to the rail. Many advantages are attained by the use of these adjustments, among them the following: By the use of the pivoted adjustment the "swifts" can be supported at a height convenient to the operator; swifts of different sizes can be used when skeins of different sizes are to be wound; the axis of each swift can be maintained in a horizontal line, and the axes of all the swifts on the same frame supported at the same height; and by the use of the horizontal adjustment, which may be either a slot in the base of the bracket or a slot in the rail (both being embraced in claim 2), the brackets can be adjusted on the rail to suit the varying widths of the swifts, and, when so adjusted, can be conveniently and securely fastened to the rail.

It is unnecessary to cite authority to show that the issuance of the complainant's patent is in itself evidence of the patentability, usefulness, and novelty of the device, and that such presumption can be overcome only by reliable and certain proof; while as to its utility it is enough to say that it has been adopted and used by the defendant corporation, and this fact is sufficient to establish its utility, at least as against it. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Young v. Wolfe (C. C.) 120 Fed. 956, 958.

To show the want of novelty or invention in the patent of the complainant, the defendant has cited a number of prior patents, and has also offered proof to show that the complainant's device was used and sold several years before its patent was issued. Some of the patents cited by the defendant, notably the Betz, Hayes, and Sweett patents, show that an adjustable joint or pivot was old in the art at the time the patent in suit was issued, and this is not denied by the complainant. None of the patents just referred to, however, have anything to do with winding machinery.

The Atkinson and Wrigley patents, issued in 1873 and 1883, respectively, both relate to winding frames in which the silk is wound from "risers" and not from "swifts." These devices, "risers" and "swifts," are unlike each other and have different uses. In the use

of a "riser" the bracket supporting it is not held in a fixed position vertically, but, on the contrary, it is purposely movable, since the bracket must frequently be raised or lowered to increase or decrease the tension of the skein which is being unwound. Furthermore, each bracket supports a single reel, and the adjustment of the lower bracket of a "riser" frame is not at all for the purpose of alignment of all the reels. Again, this bracket has two arms between which the reel is held, one longer than the other, and some of the models show a handle at the end of the longer arm for the purpose of quick and ready adjustment in case the skein should become tangled, which, as said before, is not the case with the swift-arm; for the adjustment of the swift-arm, when once made, is locked to prevent pivotal action in a vertical direction.

Adjustable brackets for "risers," the evidence shows, had been generally known and used for years, yet they do not seem to have suggested the use of adjustable brackets for "swifts"; for Mr. Ryle, the well-known silk manufacturer of Paterson, N. J., testified that swift-brackets were made rigid for 45 years, to his knowledge, and the president of the defendant company admits in his testimony that before he saw the Morrison machines he had never seen a winding machine having brackets supporting adjacent swifts, the brackets being made of a base portion fastened to the rail, and the arm portion attached to the base portion in such a way as to provide for vertical adjustment.

The only anticipating patent offered by the defendant which relates to swift-hangers is the Atwood patent of 1882. Under this patent the bracket or bar was constructed with "upwardly converging slide-ways or slots, and means for holding said bars in said slide-ways or slots," and with the beam to which the brackets or bars were attached movable, so that all the brackets or bars could be adjusted at the same time. But this device is not at all like the complainant's; that is, it does not show a swift-arm pivoted to each base at or near the rail, nor was there any means of adjustment of each arm separately, lengthwise of the rail, or means for locking each arm separately against pivotal movement. Other patents have been cited, but it is unnecessary to discuss them. The Atwood patent seems to be the only one at all like the patent in suit, and even this, when considered in detail, is, as we have shown, wholly unlike it.

The defendant, however, has not rested his case upon the patents cited, but has endeavored to show prior use and sale of the device in question. To maintain this position, the courts require that the proofs shall be clear, satisfactory, and beyond reasonable doubt. The burden of proof rests upon the defendant, and every reasonable doubt should be resolved against him. In the case of Young v. Wolfe (C. C.) 120 Fed. 956, 959, the following rule is laid down:

"In approaching the defense of prior use the rule of evidence applicable thereto should constantly be borne in mind. The defense must be established beyond a reasonable doubt. The reason for the rule is obvious. It is so easy to fabricate or color testimony which lies almost wholly in the control of the person producing it, the infirmities of the human memory are so great,

and the liability to mistake so manifest, that the court is never justified in permitting such testimony to outweigh the presumption of validity which attaches to the patent, unless it be of such a character as to carry a clear conviction and remove every reasonable doubt. This court has frequently had occasion to consider this defense, and it is, therefore, unnecessary to repeat what has been often said heretofore. Thayer v. Hart (C. C.) 20 Fed. 693; Mack v. Spencer (C. C.) 52 Fed. 819; Lalance Co. v. Habermann Co. (C. C.) 53 Fed. 375; Singer Mfg. Co. v. Schenck (C. C.) 68 Fed. 191.

"One of the alleged prior uses took place in 1871, over 30 years before the date of the witnesses' testimony; the other uses began in 1876, and have continued since that date; but the occurrences principally relied upon took place in 1887 and 1888, over 14 years prior to the date of the testimony."

Many cases of similar purport could be cited, but it seems unnecessary to protract this discussion for that purpose. The witnesses for the defendant, who testified upon the question of user, relied upon their memory to give details of what they say was made and sold from 12 to 15 years or more before the time when they testified. Under such circumstances the memory, even when untrammeled by self-interest, is liable to betray and mislead. In considering the testimony upon this point, it will be observed that it is not cumulative. The witnesses are testifying to different transactions occurring at different times. There is no corroboration, certainly no sufficient corroboration, and yet, if these devices were made in the numbers and used with the frequency that some of the witnesses would have us believe, full and ample corroboration could have been readily obtained, either from mechanics, manufacturers, or users.

Attention has already been called to Mr. Ryle's testimony, and to the testimony of the president of the defendant company, as tending to show that the complainant's device was not used as claimed by the defendant. It is worthy of consideration, moreover, that the testimony in this case was largely taken in the city of Paterson, N. J., which might properly be called the home of the silk manufacturing industry, and where we might naturally expect to find every known device of the character in question in daily use; and yet the evidence furnished, and upon which we are asked to rely to overthrow the complainant's patent, is stale and uncorroborated. Then, too, the models exhibited by the defendant do not, in our opinion, show the elements in combination which the complainant's device shows, and, if any one of them can be said to closely resemble the complainant's, it will, upon inspection, be found to be crude, imperfect, and deficient, and apparently the result of chance rather than of design. "Mere accidental use of some of the features of an invention, without recognition of its benefits, does not constitute anticipation." Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Wickelman v. A. B. Dick Co., 88 Fed. 264, 31 C. C. A. 530.

In this connection, too, it may well be asked why, if the complainant's device had been well known for years, as the defendant would now have us believe, was it made by the defendant just after, rather than long before, its introduction by the complainant; and why was it necessary, when the defendant did make it, to use

the complainant's device as a model? Upon the whole case we think the patent in suit should be sustained, since the presumption existing in its favor has not been overcome by reliable and certain proof.

A decree will be entered pursuant to the prayer of the bill.