## GENERAL ELECTRIC CO. v. WABASH APPLIANCE CORPORATION et al.

### No. 7962.

District Court, E. D. New York.

June 29, 1937.

Howson & Howson, of New York City (Hubert Howson, Merrell E. Clark, Alexander C. Neave, and John H. Anderson, all of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., and Paul Kolisch, both of New York City, of counsel), for defendants.

GALSTON, District Judge.

This is a patent suit in which the defendants are charged with the infringement of letters patent No. 1,687,510. The patent issued October 16, 1928, on the application of Marvin Pipkin for an improvement in an electric lamp bulb.

The specification describes an improved method in frosting bulbs on the inside, and frosting other thin glassware. Frosting of an electric light bulb on the inside is desirable, since better diffusion with a lower absorption of light is obtained. Moreover, the inside frosting leaves the outside surface of the article smooth, so that it will not collect dirt easily.

The object of the invention was to overcome the fragility of bulbs and thin glassware theretofore frosted on the inside. As recited by the inventor, his invention seems to have been: "I have found, however, that if the bulb is given a further treatment, in which it is subjected to an etching or frosting treatment of lower degree than that to which it was first subjected, it becomes quite strong."

However one may read the specification, and though in the original application method as well as product claims were included, the conclusion is compelling that it was the process which Pipkin deemed to be his invention. The process claims of the patent, however, were rejected and the two claims of the patent are both for a new product. They read:

"1. A glass electric lamp bulb having its interior surface frosted by etching so that the maximum brightness of an ordinary incandescent lamp comprising such a bulb will be less than twenty-five per cent of that of said lamp with a clear bulb, said interior bulb surface being characterized by the presence of rounded as distinguished from sharp angular crevices to such an extent that the strength to resist breakage by impact is greater than twenty per cent of that of the clear bulb.

"2. A glass electric lamp bulb having its interior surface frosted by etching so that the maximum brightness of an ordinary incandescent lamp comprising such a bulb will be less than twenty-five per cent of that of said lamp with a clear bulb, said interior bulb surface being characterized by the presence of rounded as distinguished from sharp angular crevices to such an extent that the strength to resist breakage by impact is greater than forty-five per cent of that of the clear bulb."

These claims are somewhat unusual in their phrasing and content, for it is obvious that by their limitation, if the structure defined could be produced by a method other than by etching, these claims would not be infringed.

The patent was found valid in General Electric Co. v. Save Sales Co. et al. (C.C. A.) 82 F.(2d) 100. Invalidity nevertheless is asserted here and reliance had on various patents and publications which were not before the court in the Save Case.

The frosting described in the patent is secured by treatment with hydrofluoric acid and ammonium compound. The initial frosting causes an etching or eating out of the surface of the bulb. It is then washed in a tank to remove the frosting solution. Thereafter the bulb is strengthened by an application of a weaker etching solution. In the plaintiff's commercial process the intermediate washing step is eliminated.

The art shows that glassware had been processed in accordance with the principle set forth in this patent. Multiple etching is shown to have been old and the surface of glass thus treated was of necessity, as is stated in the claims, "characterized by the presence of rounded as distinguished from sharp angular crevices."

British patent, No. 166,133, of 1922 relates to screens and sheets for the reception of optically projected pictures, images, and the like. The screen is formed of plate glass and a "satin-surface" is the object sought. The inventor secures this "satin-surface" by applying first a mixture of hydrofluoric acid and an alkali, and "subsequently reducing or clearing fully with hydrofluoric acid, thus producing a finely granulated and slightly diffusive surface exhibiting a satin-like 'sheen' or like effect."

Thus this patent clearly shows the use of a two-shot process of reduction of the frosted surface. Necessarily the resultant physical characteristics were the same as those obtained by the Pipkin process.

Die Glashutte of 1887 contains an article entitled, "Contributions to the Knowledge of Glass Etching" wherein it is said: "It is a priori clear that the frosted appearance of the glass can only arise because the surface possesses many unevennesses lying closely adjacent to one another and which are of such a nature that depressions and elevations pass into one another as abruptly as possible."

The author of the article was desirous of obtaining an accurate understanding of what takes place in glass etching. He said: "In order to obtain a tone as dark as possible in transmitted light, one and the same place is frosted twice in succession. With one etching a somewhat brighter tone is produced and for obtaining still brighter tones the surface frosted once is 'clear-etched' with dilute aquious fluoric acid once or several times." Again: "If such a glass plate frosted by frosting once is viewed through the microscope * * * a very uniform succession of elevations and depressions, which are very soon seen to possess crystal shape, is observed."

Sprechsaal of 1907 contains an article on the etching of hollow glass. There is described a cleaning of the glass before it reaches the frosting bath; then it is placed in the frosting bath for twenty to thirty minutes, and again the glass is cleansed; then "frequently the frosted glass is dipped into a mixture of hydrofluoric acid and acetic acid in order to remove the coating more easily." It is said: "The glasses which have been frosted in the manner above described are frequently subjected to another dipping which proceeds further whereby their surface becomes more lustrous and receives a silk-like appearance."

Journal of Industrial and Engineering Chemistry of October, 1917, contains an article by Tillotson on the Relation between the Physical Properties and Chemical Composition of Glass. VII—Etch Figures. Here again is found a disclosure of characteristic formations on the surface as a result of the etching process. The writer says: "When an etched surface as shown in Fig. 5 is immersed in a solution of hydrofluoric acid, a similar action takes place. Figs. 9 to 11 illustrate such action for one-quarter, one-half and one minute immersion in a solution of equal parts of concentrated hydrofluoric acid and water. That this result is a necessary consequence of uniform solution by the acid may be demonstrated geometrically. The first effect as shown in Fig. 9 is an enlarging and rounding out of the valleys, finally resulting, as shown in Fig. 11, in a series of smooth saucer-like depressions. This operation, which changes in so profound a way the character of the glass surface, is made evident to the naked eye only as a slight decrease in the opacity of the glass."

United States patent to Webb, 121,696, issued as early as 1871, is interesting as disclosing alternate submerging of the glass to be etched in a tank containing the acid.

Patent to Harrison, No. 1,299,936, issued April 8, 1919, was for a lighting unit and bears on the subject only because it shows a globe mounted over an incandescent lamp. As described, the globe "is formed by molding into its surface rather small protuberances and depressions whereby each protuberance is more or less rounded and merges into the depressions in a smooth and gradual manner." It would appear that Harrison sought by molding to produce a globe which had the physical characteristics of a

glass bulb defined in the structure of the two claims in suit.

None of the foregoing patents or publications was before the court in the Save Case. The court did consider the patent to Kennedy, No. 733,972 of 1903, and Wood patent No. 1,240,398 of 1917. The former discloses an inside frosted lamp. The inventor states: "The object and purpose of the present invention is to produce on the inner surface of the bulb a frosted appearance which may cover the whole of the said inner surface or only a part thereof as will be hereinafter explained. To effect this object, according to the present invention I charge the upright bulb through its lower tubular stem with an etching or corroding acid—as hydrofluoric acid for example—by pressure on the body of said acid, and after it shall have produced the desired effect by corroding or etching the inner surface of the hollow bulb, the acid is allowed to flow out by gravity, the pressure being balanced or removed. In order to cleanse the bulb thoroughly of the acid, the above operation is repeated with water, which rinses out the bulb."

This first reference to the frosting of the interior surface of an electric light bulb was followed by a long period during which the art apparently made no effort to develop interior frosting. No actual need existed for such article. In 1927 or thereabouts development in the efficiency of electric light bulbs did create a problem, for the glare from the intense light was objectionable and had to be dealt with.

The patent to Wood discloses no more perhaps than was shown in the previous prior art publications and patents disclosed. It relates to a method for making light diffusing glass screens involving the two-shot process.

It comes then to this. The patentee admitted he was familiar with an inner frosted bulb, but found such bulbs unsatisfactory because they were brittle. His problem then was, without unduly weakening the frosting, to strengthen the bulb so that the soft radiance emanating from a frosted bulb would be preserved.

In such circumstances, where would one faced with that problem normally, naturally, and logically look for aid? After all a bulb is just one form of glassware. So an investigator would look to the glassware art. Before the Pipkin process the etcher of glass had used a multiple acid treatment for breaking down sharp edges resulting from the single application of the etching solution. To apply such knowledge thus found in plate glass to a bulb would not seem to involve invention. All that Pipkin had to do was to take the Kennedy bulb and treat it to a second etching just as was shown in the British patent of 1922, in the Glashutte publication of 1887, in Sprechsaal of 1907, and in the Tillotson article of 1917. I think for that reason the claims are invalid. This is not a case in which the research worker was called upon to jump from a car coupling to an opera-glass holder, as in Mack v. Spencer Optical Mfg. Co. (C.C.) 52 F. 819, an authority cited by the plaintiff. On the contrary, the problem Pipkin had concerned glassware manufacture and nothing else.

Accordingly, the defendant may have a decree dismissing the complaint. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.